DAVID S. CUMMINGS *et al.*, Respondents, v. JOHN HURD *et al.*, Appellants.

Kansas City Court of Appeals, April 4, 1892.

1. **Principal and Agent:** AGENCY, HOW CREATED. An agency may be created by the express words or acts of the principal, or it may be implied from his conduct and acquiescence, and the nature and extent of the agent's authority may be implied from circumstances, but will be limited to acts of like nature with those acquiesced in by the principal.

2. ————: PAYMENT OF SECURITY: POSSESSION BY AGENT. If a debtor pays a written security to one as agent it is his duty at his peril to see that the person thus paid is in possession of the security; and if such person is not in possession thereof the debtor must show that such person has special authority, or has been represented by the creditor to have such special authority.

3. **Mortgages:** SATISFACTION. The true holder of the note can alone satisfy the record, and the possession of the deed of trust gives no authority, and one who, without the production of the note, takes satisfaction of the deed of trust is charged with notice of the lack of authority.

4.    **Principal and Agent:** NOTE PAYABLE AT OFFICE: AGENCY. Designating the office of a certain person as the place of payment of a note does not give such person authority to collect the note; the payor should always insist on the production of the note, and where there is any suspicion as to the agency should inquire of the principal.

5.    **Practice, Appellate:** ESTOPPEL: PLEADING: EVIDENCE. Where there is no sufficient evidence in the abstract to support the plea of estoppel it becomes unnecessary to consider whether that defense is well pleaded.

6.    **Fraud:** NEGLIGENCE: INNOCENT PARTIES. When one of two innocent parties must suffer, the loss must fall upon him whose negligence brings it about.

*Appeal from Henry Circuit Court.*—HON. D. A. DEARMOND, Judge.

REVERSED AND REMANDED (*with directions*).

*Thomas M. Casey*, for appellants.

(1)    Hurd, the defendant, as the innocent holder for value without notice of the bond sought to be enjoined, cannot be bound by the unauthorized acts of Cheek. The fact that he bought the bond of Cheek does not give Cheek any right to meddle with Hurd's rights. Payment to Cheek, who neither had the possession of the bond nor authority to collect, is no protection. *Tappan v. Morseman*, 18 Iowa, 499; *Austin v. Thorp*, 30 Iowa, 376; *Cooley v. Williams*, 34 Ill. 68; *Smith v. Kidd*, 68 N. Y. 130; *Ritch v. Smith*, 82 N. Y. 627; *Grewster v. Cames*, 103 N. Y. 556; *Crane v. Gruenewald*, 120 N. Y. 274; Mechem on Agency, sec. 373; Dunlap's Paley's Agency, 274, 275. (2) It is now the general rule that, if a debtor, owing money on a written security, pays or settles with another as agent, it is his duty at his peril to see the person thus settled with is in possession of the security. *Tappan v. Morseman, supra; Smith v. Kidd*, 68

N. Y. 130–141; *Henn v. Conisby*, 1 Ch. Cases, 93; Story on Agency, secs. 98, 104; 2 Parsons on Bills; *Williams v. Walker*, 2 Sand. Ch. 325; *Doubleday v. Kress*, 50 N. Y. 410. Nor is there the slightest evidence that David Cummings acted upon any knowledge that Cheek had ever collected any other bonds for Hurd. He testified he knew nothing of their dealings. (3) The fact that Cheek negotiated the loan and was made trustee in the deed of trust did not justify the payment to Cheek in the absence of the possession of the bond. Had he called for the note and insisted upon its production he would have learned Cheek did not have it, and this alone would have put him on his guard. *Cooley v. Williams*, 34 Ill. 68. (4) The bond was not only not in Cheek's hands, but was not due. *Smith v. Kidd*, 68 N. Y. 141; *Doubleday v. Kress*, 50 N. Y. 410; Mechem on Agency, sec. 380; *Quigley v. Bank*, 80 Mo. 289; *Parnther v. Gaitskell*, 13 E. Rep. 437; 2 Greenleaf on Evidence, sec. 65. (5) Cheek was Cummings' agent. The fact that the bond was payable at his office justified the holders of the coupons and bonds to send them there for collection. As to those sent to him, he was the agent of Hurd, but as to bonds or coupons not sent to him he had no authority to collect. *Ward v. Smith*, 7 Wall. 447; *Knox Co. v. Groggin*, 16 S. W. Rep. 684. (6) Hurd's uncontradicted evidence is that he knew nothing of Cheek's having this money, and Cummings swears he never notified Hurd. *Owing v. Hull*, 9 Pet. 629; *Baldwin v. Bennows*, 47 N. Y. 212. (7) Hurd kept his bond; Cummings trusted Cheek. When one of two innocent parties must suffer, the loss must result to the one whose negligence brings it about. Had Cummings acted with common sense and kept his money till he received the bond he could not have been hurt. *Smith v. Kidd*, 68 N. Y. 130.

*Calvird & Lewis,* for respondents.

(1) A single act by an agent and a recognition by the principal may be such as to bind the principal in subsequent acts of like character. *Stothard v. Aull,* 7 Mo. 318; *Fayles v. Ins. Co.,* 49 Mo. 380; *Wilcox v. Railroad,* 24 Minn. 269. (2) An agency and the extent of authority may be inferred from circumstances. *Mitchum v. Dunlap,* 98 Mo. 418; *Hull v. Jones,* 69 Mo. 587. (3) The evidence shows such a continuous course of dealing between Hurd and Cheek as to amply support a finding that Cheek was the established general agent of Hurd to collect principal as well as interest on loans, and, therefore, a payment to Cheek discharged the $200 bond. *Gibson v. Zeibig,* 24 Mo. App. 65; *McGinnis v. Mitchell,* 21 Mo. App. 493; *Security Co. v. Richardson,* 33 Fed. Rep. 16; *Quin v. Drisbach,* 16 Pac. Rep. 762; *Sax v. Drake,* 69 Iowa, 760; *Simon v. Brown,* 38 Mich. 552; *Matterson v. Black,* 46 Mich. 393; *Minter v. Railroad,* 41 Mo. 508. (4) As between Hurd, the mortgagee, and the plaintiffs, Hurd should bear the loss, by reason of his permitting the mortgage itself to be surrendered up. *Heyder v. Bldg. Ass'n,* 8 Atl. Rep. 310. (5) John Hurd is estopped to deny that Cheek was his agent in dealing with the Henry county borrowers. Bigelow on Estoppel [5 Ed.] p. 565; Mechem on Agency, sec. 84; *Fanning v. Cobb,* 20 Mo. App. 577; *DeBaum v. Atchison,* 14 Mo. 543; *Rice v. Groffman,* 56 Mo. 443; *Cupples v. Wheeler,* 61 Mo. 583. (6) The law of commercial paper is not involved in this case, as Hurd was the payee in the $200 bond, and had never parted with it.

*R. T. Railey* and *Frank Hagerman,* for appellants, in reply.

(1) The true holders of the note can alone satisfy the record, and the possession of the deed of trust gives

no such authority (*Lee v. Clark*, 89 Mo. 553; *Hagerman v. Sutton*, 91 Mo. 519); but, on the contrary, one who without the production of the note takes a satisfaction of the deed of trust is charged with notice of the lack of authority. Jones on Mortgages [2 Ed.] sec. 476. Naming Cheek's office as the place of payment gave no authority to Cheek to collect. 1 Randolph on Commercial Paper, sec. 125; *Glatt v. Foreman*, 120 Ind. 384; *Ward v. Smith*, 7 Wall. 447; *Groggin v. Knox Co.*, 16 S. W. Rep. 684; 3 Randolph on Commercial Paper, sec. 1415; Mechem on Agency, sec. 290. (2) There was no agency by estoppel.

SMITH, P. J.—The defendants have brought this case here by appeal to review the action of the circuit court in entering a decree, forever enjoining defendant John Hurd from the collection of a negotiable bond for $200 and the interest coupons attached. This bond was duly executed and delivered for value to Silas E. Cheek, October 25, 1882, payable five years after date and bearing eight-per-cent. interest. This bond and coupons were sold to defendant Hurd in Bridgeport, Connecticut, for full value. He has ever since been the owner and holder. The bond has never been out of his possession since he bought it. At the time it was executed, Cummings, the maker, also executed another bond for $1,000, due in five years. Cheek also sold this other bond to defendant Hurd. Hurd sold this $1,000 bond to Mrs. Lyman of Bridgeport, Connecticut. Afterward, in 1883, James F. Cummings, the maker of these bonds, sold the lands which he had conveyed by deed of trust to Cheek to secure these bonds and interest, to his brother, David S. Cummings, and Cummings conveyed the same to Henry Lane and Mrs. Sarah Lane. After David Cummings bought the lands, and long before the maturity of the bonds, he applied to Cheek

to pay off the same. Cheek did not have either of the bonds at the time, and Cummings refused to pay either till he received them. After some months Cheek succeeded in getting Mrs. Lyman's bond of $1,000 and then Cummings paid that off, and although Cheek did not have the $200 bond Cummings claims he paid that also. However, he produced no receipt or check or other voucher showing that he had paid it, except the record entry. By that, it appears Cheek made no claim of being Hurd's agent. He claimed to be the owner and assignee of the bond in suit.

Cheek absconded in December, 1885, and has not been seen since. Hurd's evidence stands uncontradicted that he bought the bond and coupons enjoined before due. It is not asserted he knew of any agreement between Cheek and James Cummings that this bond could be paid off before maturity. In the business communications between Hurd and Cheek, there is not a sentence, line or syllable that tends to make Cheek Hurd's general agent. These letters show no more than that there were remittances from one to the other during the continuance of their business relations. When Cheek would send Hurd a bond and mortgage which the latter could use he would either remit for it or authorize the former to draw for the amount of security purchased. It too appears thereby that Hurd transmitted from time to time as they fell due the coupons for collection. In one or more instances the bonds themselves were sent for collection.

David S. Cummings' testimony shows that he kept the money in bank for months before Cheek could get Mrs. Lyman's bond, "because it was not business to pay it without taking up the bond," and yet when Cheek finally got that bond, he paid this one without getting it or any security against it. The whole case in a nutshell is that James Cummings made the bond,

received the money for it, gave the mortgage now
sought to be enjoined, that Hurd bought the bond in
good faith before maturity for value, and was holder
when David Cummings paid the money to Cheek.
David Cummings bought the land with full notice of
the mortgage, and the Lanes bought of David with
full notice.

It seems to us that the decisive question presented
by the appeal in this case is that of agency or whether
Cheek had authority to receive payment of the Cum-
mings bond for $200 while it was in the actual custody
of Hurd who was the purchaser thereof, for value
before maturity. If he had not such authority he
could not enter full satisfaction of the deed of trust
on the margin of the record. An agency may be
created by the express words or acts of the principal, or
it may be implied from his conduct and acquiescence,
so the nature and extent of the authority of an agent
may be implied or inferred from circumstances. If the
agency arises by implication from numerous acts done
by the agent with the tacit consent or acquiescence of
the principal, it is deemed limited to acts of like nature.
*Sharp v. Knox*, 48 Mo. App. 169; *Gibson v. Zeibig*, 24
Mo. App. 66; *Grocery Co. v. Capen*, 23 Mo. App. 301;
*Wheeler v. Metropolitan Co.*, 23 Mo. App. 190; *Brooks
v. Jamison*, 55 Mo. 505; *Franklin v. Globe*, 52 Mo. 461;
*Edwards v. Thomas*, 66 Mo. 468; Greenleaf on Evi-
dence, sec. 60; Story on Agency, secs. 45, 87. And
where it appears that an alleged agent has repeatedly
performed acts like the one in question which the prin-
cipal has ratified and adopted, his authority for the
performance of the disputed act may be inferred.
Mechem on Agency, sec. 86; *Jewett v. Railroad*, 10 Ind.
586; *Fisher v. Campbell*, 9 Port. (Ala.) 210; *Ransom v.
Curtis*, 19 Ill. 456; *Emerson v. Coggswell*, 16 Me. 77;

*Walsh* v. *Pierce,* 12 Vt. 100; *Downer* v. *Monsron,* 2 Gratt. (Va.) 237.

Now, applying the rules to which we have just adverted, to the facts in the case before us, and the conclusion is irresistible that the collection of the Cummings bond by Cheek was an unauthorized act of his. It is a noticeable fact that in the correspondence between Hurd and Cheek, as well as in the entire evidence, there does not appear a single instance where the latter collected a bond for the former without having possession of the security. There is no proof that Cheek repeatedly performed acts like the one in question which were ratified and adopted by Hurd. Certainly the fact that Cheek had the custody of the $1,000 bond of Mrs. Lyman and the deed of trust and was authorized to receive payment of the bond, and to enter satisfaction on the deed of trust on the record to that extent, did not confer the semblance of an authority upon him to collect the Hurd bond and satisfy the deed of trust as to it. The evidence discloses no word or act of Hurd creating any such agency, nor does it disclose any circumstance from which it can be reasonably inferred. Since Cheek had neither the custody of the Hurd note nor authority to collect it, the payment of it to him by Cummings under such circumstances was as if it had not been paid at all.

It is a well-settled general rule that, if a debtor owing money on a written security pays to or settles with another as agent, it is his duty at his peril to see that the person thus paid, or settled with, is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the secur-

ity. *Freeman v. Whitford*, 39 Mo. App. 311; *Sharp v. Knox, supra; Tappan v. Morseman,* 18 Iowa, 499; *Austin v. Thorp*, 30 Iowa, 376; *Cooley v. Williams*, 34 Ill. 68; *Smith v. Kidd*, 68 N. Y. 136; *Ritch v. Smith*, 82 N. Y. 627; *Brewster v. Cames*, 103 N. Y. 556; *Doubleday v. Kress*, 50 N. Y. 410; *Parnther v. Gaitskell*, 13 East. 437; 2 Greenleaf on Evidence, sec. 65; Jones on Mortgages [4 Ed.] sec. 964.

The true holder of the note can alone satisfy the record, and the possession of the deed of trust gives no authority (*Lee v. Clark*, 89 Mo. 553; *Hagerman v. Sutton*, 91 Mo. 519), but on the contrary one who, without the production of the note, takes satisfaction of the deed of trust is charged with notice of the lack of authority. Jones on Mortgages [2 Ed.] sec. 476.

Designating the office of Cheek as the place of payment gave Cheek no authority to collect the note. 1 Randolph on Commercial Paper, sec. 125; *Glatt v. Foreman*, 120 Ind. 384. The payor always has the right to insist, and should for safety do so, that the obligation be surrendered as a condition of payment. 3 Randolph on Commercial Paper, sec. 1415. And if there is any reason for suspicion of lack of authority inquiry should be made of the principal. Mechem on Agency, sec. 290. It follows that, as Cummings paid Cheek the Hurd bond without receiving it, he must be held as charged with notice of the lack of authority, unless the evidence clearly shows, as it does not, specific authority to act in that particular case. The release of the deed of trust was, therefore, a nullity.

As the abstract contains no sufficient evidence to support the plea of estoppel *in pais*, it becomes unnecessary to consider whether that defense is well pleaded in the answer. The release by Cheek upon the margin of the record of the deed of trust shows that Cummings dealt with Cheek as the "assignee and legal holder of

the bond," and not as the agent of Hurd. There can be no contention that there is anything in the evidence to justify the conclusion that Cummings was induced by any act of Hurd to deal with Cheek as the assignee and legal holder of the bond. The element of estoppel does not appear in the case. *Chouteau v. Goddin,* 39 Mo. 230.

The plaintiffs insist that, as between Hurd and them, the loss occasioned by the fraud of Cheek should fall on Hurd for the reason that he permitted the deed of trust to be surrendered up. We cannot assent to this. Hurd did not surrender it to Cheek. Mrs. Lyman, owning the larger bond, had at least as much right to the possession of that instrument as Hurd. If Cummings had taken the precaution to have required the production of the $200 bond before he paid it, and took satisfaction of the deed of trust he would not have been the victim of the fraud of Cheek.

It was his neglect to require this that made the fraud possible. The rule is that, when one of two innocent parties must suffer, the loss must fall upon him whose negligence brings it about.

Upon no principle with which we are acquainted can the decree in this case be upheld. It must be reversed, and the cause remanded with directions to enter judgment for defendants. All concur.